IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

　　　*Plaintiff*,

　　v.

DONTE WISE,

　　　*Defendant*.

Criminal No. ELH-12-0458

**MEMORANDUM OPINION**

Defendant Donte Wise, through counsel, filed a "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 207. The motion is supported by three exhibits (ECF 207-1 to ECF 207-3) and a supplement. ECF 213. The government opposes the Motion. ECF 215.  Defendant has replied (ECF 216) and has submitted another supplement. ECF 220.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

**I.  Background[1]**

Wise was one of three defendants charged in a four-count indictment on August 23, 2012. ECF 18.  In particular, he was charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count Two); possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

---

[1] The case was originally assigned to Judge William D. Quarles, Jr. It was reassigned to me due to the retirement of Judge Quarles.

On October 31, 2012, Wise entered a plea of guilty to Counts Two and Three of the Indictment. ECF 34.  The plea was tendered pursuant to a Plea Agreement.  *See* ECF 35. In particular, the plea was entered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a sentence of 120 months as to Count Two and 60 months, consecutive, as to Count Three, for a total sentence of 180 months' incarceration. *Id.* ¶ 7(d).

The Plea Agreement included a Stipulation of Facts.  *Id.* ¶ 7.  The Stipulation reflected that in August 2012, Wise and two coconspirators met with a person who, unknown to them, was a confidential informant. They agreed to rob a "stash house" that regularly contained 10 to 14 kilograms of cocaine with the use of firearms. On the day they planned to commit the robbery, agents approached to arrest all three conspirators. Wise attempted to flee and discarded a loaded Jennings 9mm handgun in the process of fleeing. Upon apprehension, a pair of black rubber gloves and a black balaclava was recovered from him.

Sentencing was held on February 19, 2013.  ECF 47. Wise, who was born in 1982, was 30 years old at the time of his sentencing.  ECF 44 (Presentence Report). The Guidelines called for a total sentence ranging from 322 to 387 months of imprisonment (262 + 60 to 317 + 60).  *Id.* ¶ 62. Consistent with the Plea Agreement, Judge Quarles imposed a total sentence of 180 months' incarceration, with credit for time served from August 15, 2012. ECF 48.

Following the Supreme Court's decision in *United States v. Davis*, __ U.S.__, 139 S.Ct. 2319 (2019), defendant filed a § 2255 petition to vacate his conviction under Count Three, arguing that his conviction for a Hobbs Act conspiracy no longer qualified as a predicate crime of violence under 18 U.S.C. § 924(c). The government agreed with defendant. Thus, by Order of November 18, 2019, the Court vacated the conviction as to Count Three and vacated the sentence as to Count Two.

Resentencing as to Count Two was held on February 26, 2020. ECF 173; *see* ECF 187. An amended Presentence Report was prepared for the resentencing. ECF 168 ("PSR"). It reflected a final offense level of 29 for Count Two. *Id.* ¶ 26. The defendant had 17 criminal history points. *Id.* ¶ 48. And, the instant offense was committed while the defendant was on parole. *Id.* ¶ 49. Therefore, two more points were added, under § 4A1.1(d) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id.* Thus, Wise had a total of 19 criminal history points and was a Criminal History Category of VI. *Id.* ¶ 50.

Based on a final offense level of 29 and a Criminal History Category of VI, Wise's advisory Guidelines called for a sentence as to Count Two ranging from 151 months to 188 months' incarceration. *Id.* ¶ 65.

At resentencing, the Court imposed a sentence of 156 months of incarceration, with credit for time served since August 15, 2012. ECF 174 (Amended Judgment). In other words, the Court reduced defendant's original sentence by two years.

Defendant noted an appeal. ECF 179. The judgment was affirmed by the Fourth Circuit on November 17, 2020. ECF 202. The mandate issued on December 9, 2020. ECF 204.

Wise, who is now 38 years of age, is serving his sentence at FCI Fort Dix. ECF 529. He has served about 103 months of his sentence, or roughly 66%, exclusive of good conduct credit. Wise has a projected release date of September 12, 2023. ECF 207 at 4.

Notably, the PSR that was prepared for Wise's resentencing in 2020 noted that defendant "advised he is in good health" and was not receiving any medical treatment or taking any prescription medications. ECF 168, ¶ 58.

Defendant sought compassionate release from the Warden in May 2020. ECF 207-1. The Warden denied Wise's request. ECF 207 at 6.

## II.  Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018);

*see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276.  But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)

Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>   (I)  suffering from a serious physical or medical condition,
>
>   (II) suffering from a serious functional or cognitive impairment, or

6

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement. Rather, the Court must consider the Sentencing Commission's policy statements. *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling

7

reasons for sentence reduction"). However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act. Thus, it is only "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at *7; *see also United States v. Zullo*, 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283. Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See, e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir.

2020).   But, compassionate release is a "rare" remedy.  *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.  COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3]   The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ."  *Antietam Battlefield KOA*, 461 F.

---

[2] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

Supp. 3d at 223 (citation omitted). And, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  As of March 3, 2021, COVID-19 has infected more than 28.7 million Americans and caused over 517,00 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Mar. 3, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus.  But, the country has recently seen the rollout of three vaccines for COVID-19 (Pfizer, Moderna, and Johnson & Johnson). The vaccines were initially made available to health care workers and the elderly in nursing homes.   But, the criteria for eligibility has expanded considerably and varies among the States.

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, F*ederal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/ federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f. As of March 23, 2021, the BOP had 125,458 federal inmates and 36,000 staff. And, by that date, the BOP had administered 88,026 vaccine doses to staff and inmates. *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 23, 2021).

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.* The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed*

*with COVID-19*, C<small>TRS.</small> F<small>OR</small> D<small>ISEASE</small> C<small>ONTROL</small> & P<small>REVENTION</small> (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, C<small>TRS.</small> F<small>OR</small> D<small>ISEASE</small> C<small>ONTROL</small> & P<small>REVENTION</small>, https://bit.ly/3dPA8Ba (last accessed December 9, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2; *Senate Judiciary Hrg. Transcript on Incarceration during COVID-19*, R<small>EV.COM</small> (June 2, 2020) (Testimony of BOP Dir. Michael Carvajal at 47:00) ("Prisons by design are not made for social distancing. They are on [sic] the opposite made to contain people in one area."). Indeed, prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high.").

To illustrate, prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. *See* Kim Bellware, *Prisoners and Guards Agree About Federal Coronavirus Response: 'We do Not Feel Safe,'* W<small>ASH.</small> P<small>OST</small> (Aug. 24, 2020) (reporting use of non-reusable

masks for months and a lack of transparency around policies for PPE and testing). They do not get to decide where, when, or how to eat or sleep.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020).  Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney

General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ."  *Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ."  *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.  *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, the virus persists in penal institutions.[4]  As of March 23, 2021,  BOP reported that 451 inmates out of a total of 125,458 inmates, and 1,363 BOP staff out of some 36,000 staff members, currently test positive for COVID-19; 47,097 inmates and 5,298 staff have recovered from the virus; and 226 inmates and four staff members have died from the virus.   Moreover,   the   BOP   has   completed   107,748   COVID-19   tests.   *See*

---

[4]  The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19.  *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020),  https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems.*" America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/coronavirus-prisons-jails.html.

https://www.bop.gov/coronavirus/ (last accessed Mar. 23, 2021). *See COVID-19*, Fed. Bureau of

Prisons, https://bit.ly/2XeiYH1.

    With respect to FCI Fort Dix, where the defendant is now a prisoner, as of March 23, 2021,

the BOP reported that three inmates and 41 staff have tested positive for COVID-19 and 1821

inmates and 47 staff have recovered at the facility. And, 183 staff and 157 inmates have been

inoculated with the vaccine. *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 23, 2021).

## IV. Discussion

    Wise moves for compassionate release on the ground that the conditions at FCI Ft. Dix

render him particularly vulnerable to COVID-19. ECF 207 at 7. In particular, he argues that the

high rate of infection at Ft. Dix presents an extraordinary and compelling reason for release. *Id.* at

10. Further, he contends that he is not a danger to the community and that the factors under 18

U.S.C. § 3553(a) favor his release. *Id.* at 11-19.

    In opposition, the government argues that Wise has not presented any extraordinary or

compelling reasons that justify his release. ECF 215 at 17. Moreover, it asserts that Wise remains

a danger to the community and that the § 3553(a) factors militate against a reduction of his

sentence. *Id.* at 20-26.

    I agree with the government that Wise has not presented an extraordinary and compelling

reason for release. Although the rates of infection for COVID-19 at Ft. Dix were once the highest

in the BOP, the rates have decreased dramatically over the past three months. And, as of March

23, 2021, only three inmates tested positive for COVID-19. Moreover, defendant is not terminally

ill, over 65 years of age, and does not claim to have any risk factors for COVID-19 that would

establish eligibility for compassionate release. *See People of Any Age with Underlying Medical

Conditions*, Ctrs. For Disease Control & Prevention (Nov. 2, 2020), https://bit.ly/38S4NfY.

15

Notably, fear of contracting the coronavirus while incarcerated is not a sufficient reason for granting compassionate release. As Judge Chasanow aptly said: "While all share the concern of the public health challenges caused by COVID-19, and appreciate the heightened anxiety experienced by those incarcerated in correctional facilities, the generalized and unspecific reasons…do not satisfy the standard for compassionate release." *United States v. Harris*, DKC-08-00319, 2020 WL 2512420, at *1 (D. Md. May 15, 2020).

"Simply put, the coronavirus is 'not tantamount to a "get out of jail free" card.'" *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. March 24, 2020) (citation omitted). As the Third Circuit said in *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020): "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."

Because Wise has failed to provide an extraordinary and compelling reason for compassionate release, I need not address the relevant sentencing factors under 18 U.S.C. § 3553(a) and § 3142(g). In any event, I am satisfied that a reduction of Wise's sentence to time-served would be inconsistent with those factors.

Wise has only served about 66% of his revised sentence. And, that sentence was towards the low-end of the Guidelines range. In addition, as the government notes, Wise's criminal history dates to age 17, with two serious prior offenses. ECF 168, ¶¶ 29, 30. It also includes five prior felony drug convictions. *Id.* ¶¶ 34, 36, 38, 40, 43, 45.  There were other convictions as well. *See, e.g., id.* ¶¶ 32, 33, 39. Repeatedly, the criminal justice system was very lenient with the defendant. Clearly, he was not deterred.

Defendant is the father of six children from five relationships. *Id.* ¶ 55. He began using marijuana when he was 13 years old. *Id.* ¶ 60. While he was incarcerated, he obtained his GED.

16

*Id.* ¶ 61.  Moreover, the Court applauds Wise's rehabilitative efforts while incarcerated.  He has completed a number of courses, including drug treatment and parenting courses.  ECF 207 at 15. I am also mindful that he has had only one disciplinary infraction during his time in custody.  *Id.*

But, given defendant's failure to provide an extraordinary and compelling reason for release, coupled with the facts of the offense and defendant's prior criminal history, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

### V.  Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 207), *without prejudice*.

An Order follows, consistent with this Memorandum Opinion.


Date:  March 26, 2021                                    _____/s/_____
                                                                          Ellen Lipton Hollander
                                                                          United States District Judge

17